**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
**CASE NO: 8:17-cv-01430-JSM-AAS**

PATRICIA AVILA, individually and on behalf of all others similarly situated,

        Plaintiffs,

  v.

SP BEACH HOTEL CORP.,

        Defendant.

**JOINT MOTION FOR APPROVAL OF SETTLEMENT**
**AND DISMISSAL OF THE LAWSUIT WITH PREJUDICE**

Plaintiff Patricia Avila ("Named Plaintiff"), and Plaintiffs Brian Rose, Eduardo Valentin, Zahira Baidouri, Leonard Walters, Humberto Britto, Zaim Osmanovic, Patrick Filson, Adelino Cisternas, Miranda O'Bryan, and Zachary Rainville ("Opt-In Plaintiffs") (collectively, "Plaintiffs"), and Defendant SP Beach Hotel Corp. ("Defendant," and together with Plaintiffs, the "Parties"), by their attorneys hereby jointly move for Court approval of the mutually agreed upon terms and conditions of the Parties' Collective Action Settlement Agreement and Release of Wage and Hour Claims ("Settlement Agreement"). The Parties have jointly submitted the Settlement Agreement for the Court's inspection. *See* Exhibit 1.

The Settlement Agreement fully resolves Plaintiffs' claims under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, et. seq. If the Court approves the Parties' Settlement Agreement, the Parties respectfully request dismissal of the above-captioned action with prejudice, in its entirety, with the Parties to bear their own costs, fees, and expenses except

as otherwise set forth in the Settlement Agreement. A Proposed Order of Dismissal with Prejudice is attached hereto as Exhibit 2. In support thereof, the Parties state as follows:

## MEMORANDUM IN SUPPORT

1. Plaintiffs filed the Collective Action Complaint on June 15, 2017, alleging that Defendant violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). Specifically, Plaintiffs claimed that they regularly worked more than 40 hours per week but received only their regular rate of pay for each hour worked. (*See e.g.* ECF No. 2 at ¶¶ 27, 30, 31-34).

2. Defendant, which has not employed any of the Plaintiffs since February 2017, vigorously denies Plaintiffs' material claims and allegations, including the assertions that Defendant violated the FLSA's overtime provisions with respect to Plaintiffs, and further denies any and all liability whatsoever. Defendant believes that it properly and lawfully classified Plaintiffs as exempt from the FLSA's overtime provisions pursuant to Section 7(i) of the FLSA. *See* 29 U.S.C. § 207(i).

3. On June 19, 2017, Brian Rose, Edwardo Valentin, Zahira Baidouri, Leonard Walters, Humerto Britto, Zaim Osmanovic, and Patrick Filson filed consent to join forms pursuant to the opt-in provisions of the FLSA. On July 3, 2017, Adelino Cisternas filed a consent to join form.

4. On August 9, 2017, Defendant filed an Answer, denying all of Plaintiffs' claims. (ECF No. 17.)

5. On August 10, 2017, the Court issued an FLSA Scheduling Order. (ECF No. 19.)

6. On August 30, 2017, the Plaintiffs filed an unopposed Motion for Order Conditionally Certifying Class, Approving Class Notice and Requiring Defendant's Disclosure

of Contact Information For Class Members, (ECF No. 23), which the Court granted on September 1, 2017, (ECF No. 25). Thereafter, Notice was distributed in accordance with the Court's Order.

7. On September 13 and 22, 2017, Miranda O'Bryan and Zachary Rainville, respectively, filed consent to join forms. Thus, ten plaintiffs in total filed consent to join forms pursuant to the opt-in provisions of the FLSA. The Opt In Plaintiffs and the Named Plaintiff together represent approximately 61 percent of the total collective.

8. Since the FLSA Scheduling Order was issued, the Parties, through counsel of record, exchanged the required documents, responded to the Court's interrogatories, analyzed and evaluated Plaintiffs' time and pay records, and engaged in protracted, arms' length settlement discussions.

9. While Defendant continues to deny any wrongdoing under the FLSA and maintains that Plaintiffs were properly classified as exempt, such that their recovery, if any, should be minimal, to avoid the costs, distraction and uncertainty of litigation, the Parties have negotiated a settlement in this matter.

10. On March 20, 2018, after extensive discussions and negotiations based upon their independent calculations and assessments, the Parties reached an agreement to settle in principle and filed a Notice of Settlement. (ECF No. 53.) The Parties agree that the Settlement Agreement reflects a reasonable compromise of the disputed issues.

11. Pursuant to the Settlement Agreement, Plaintiffs will receive a total amount of $20,000.00 for settlement of their FLSA claims, which shall be apportioned as set forth below. The apportionment awards shares of the total settlement sum (less attorneys' fees, costs and an incentive award for the Named Plaintiff) proportionally based on the number of alleged overtime

hours worked by each Plaintiff, as estimated by Plaintiffs' counsel based on information provided by Defendant, as follows:

(a) Patricia Avila, as the Named Plaintiff, will receive $300.00 as an incentive award for her diligence, commitment and investment in this lawsuit;[1]

(b) Patricia Avila is estimated to have worked 285.4 alleged overtime hours. She will receive an additional payment of $695.82;

(c) Brian Rose is estimated to have worked 358.7 alleged overtime hours. He will receive a payment of $874.53;

(d) Eduardo Valentin is estimated to have worked 805.8 alleged overtime hours. He will receive a payment of $1,964.57;

(e) Zahira Baidouri is estimated to have worked 96.15 alleged overtime hours. She will receive a payment of $234.42;

(f) Leonard Walters is estimated to have worked 366 alleged overtime hours. He will receive a payment of $892.32;

(g) Humberto Britto is estimated to have worked 781.1 alleged overtime hours. He will receive a payment of $1,923.86;

(h) Zaim Osmanovic is estimated to have worked 390.9 alleged overtime hours. He will receive a payment of $953.03;

(i) Patrick Filson is estimated to have worked .15 alleged overtime hours. He will receive a payment of $10.00;

(j) Adelino Cisternas is estimated to have worked 1283.85 alleged overtime hours. He will receive a payment of $3,130.08;

(k) Miranda O'Bryan is estimated to have worked 129.05 alleged overtime hours. She will receive a payment of $314.63;

(l) Zachary Rainville is estimated to have worked 9.2 alleged overtime hours. He will receive a payment of $22.43; and

---

[1] "Incentive awards are routinely awarded to named plaintiffs for the services they provided and the risks they undertook during the litigation." *Sherman v. Corizon Health, Inc.*, No. 2:12-CV-635-FTM, 2014 WL 5690024, at *3 (M.D. Fla. Nov. 4, 2014) (citing *Hosier v. Mattress Firm, Inc.*, No. 3:10–cv–294–J–32JRK, 2012 WL 2813960, *5 (M.D.Fla. June 8, 2012) (approving a $2,500.00 service payment to the named plaintiff).

   (m) As discussed further below, an amount of $7,990.36 will be apportioned to payment of Plaintiffs' attorneys' fees and an amount of $693.95 will be apportioned to payment of Plaintiffs' costs.

With the exception of the incentive award to Named Plaintiff, the entirety of which will be reported via IRS Form 1099, fifty percent of settlement payment to each Plaintiff will be treated as payment for his/her alleged unpaid wages reported via IRS Forms W-2, and fifty percent will be treated as payment for his/her alleged liquidated damages, penalties, and interest, reported via IRS Form 1099.  Based on the discovery that has occurred and the information learned during that discovery, Plaintiffs agree that a gross settlement sum of $20,000.00 is a fair compromise of their FLSA claims.

  12. Plaintiffs also represent that they are receiving a payment for attorneys' fees and costs, which, for the reasons discussed more fully below, the Parties agree is fair and reasonable in light of the efforts advanced by Plaintiffs' counsel and the results attained on Plaintiffs' behalf.

  13. With their settlement, the Parties aim to fully, finally, and forever resolve their dispute, to avoid the costs, distraction and uncertainty of continued litigation, and to foreclose the possibility of future litigation between the Parties.  To that end, the Parties agree that the settlement payments to Plaintiffs are intended to compensate them for their acquiescence to all terms of the Settlement Agreement, including a release of wage and hour claims.

  14. Pursuant to the Court's March 21, 2018 Order and *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1352-55 (11th Cir. 1982), which requires review of the Parties' Settlement Agreement, the Parties file their Settlement Agreement herewith as Exhibit 1.

  15. Accordingly, the Parties seek this Court's review and approval of their Settlement Agreement and the dismissal of Plaintiffs' claims against Defendant, with prejudice.

WHEREFORE the Parties respectfully request that this Court enter an Order: (i) approving the Parties' Settlement Agreement as a fair and reasonable resolution of Plaintiffs' claims; and (ii) dismissing Plaintiffs' claims against Defendant, with prejudice.

## MEMORANDUM OF LAW

### I. The Court Should Approve the Settlement Agreement

#### A. Standard of Review

Pursuant to the case law of this Circuit, judicial review and approval of an FLSA settlement is necessary to give it final and binding effect. *Lynn's*, 679 F.2d at 1350. As the Eleventh Circuit held in *Lynn's*:

> There are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees. First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them….The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations. When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness.

*Id*. at 352- 53.

Before approving an FLSA settlement, the Court must scrutinize it to determine if it is "a fair and reasonable resolution of a bona fide dispute." *Id*. at 1354-55. If the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement 'in order to promote the policy of encouraging settlement of litigation.'" *Id*. at 1354. In determining whether the settlement is fair and reasonable, the Court should consider the following factors: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the

range of possible recovery; and (6) the opinions of the counsel. *See Hamilton v. Frito-Lay, Inc.*, No. 6:05-cv-592-Orl-22JGG, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007) (quoting *Leverso v. South Trust Bank of Ala., Nat. Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994)), *report and recommendation adopted*, 2007 WL 219981 (M.D. Fla. Jan. 26, 2007).

In applying the foregoing factors, there is a "strong presumption" in favor of approval. *Hamilton*, 2007 WL 328792 at * 2-3; *see also Dail v. George A. Arab, Inc.*, 391 F. Supp. 2d 1142, 1146 (M.D. Fla. 2005) ("When considering these factors, the Court should keep in mind the "strong presumption" in favor of finding a settlement fair." (internal quotation marks and citations omitted)).

### B. All of the Relevant Criteria Support Final Approval of the Agreement

The settlement here is the negotiated result of adversarial proceedings, which itself is an indication of its fairness. In *Lynn's Food Stores,* Judge Goldberg, sitting on the Eleventh Circuit by designation, noted that the initiation of the action by the employees provides some assurance of an adversarial context. 679 F.2d at 1354. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. *Id.* Here, Plaintiffs made a claim for unpaid alleged overtime wages, and Defendant denied Plaintiffs' allegations and asserted a number of defenses, including the defense that Plaintiffs were properly classified as exempt. The Parties engaged in arm's length negotiations, aided by experienced counsel, in order to resolve Plaintiffs' claim. There was no fraud or collusion behind the settlement.

The complexity, expense, and length of future litigation, as well as the stage of the proceedings and the amount of discovery completed, also militate in favor of this settlement.

Although the litigation is still in a relatively early stage, the Parties exchanged information and documents related to Plaintiffs' wages and hours worked before reaching an agreement to settle. Hence, when the Agreement was reached, the Parties were fully able to make a reasonable and educated evaluation of the strengths and weaknesses of their respective positions as reflected by objective evidence. If the Parties continued to litigate this matter, they would be forced to engage in costly litigation -- including exchanging written discovery, producing documents, taking depositions and engaging in motion practice, including possible motions to decertify the conditionally certified collective action and anticipated summary judgment motions -- with an outcome that remained uncertain for both Parties.

The probability of Plaintiffs' success on the merits also weighs in favor of this settlement. Defendant maintains that its former banquet servers, including Plaintiffs, are exempt from the FLSA's overtime requirements. While the FLSA requires employers to pay qualifying employees, who work in excess of 40 hours per week, overtime pay at a rate of 1.5 their hourly rate, this requirement does not apply to commissioned employees when: (1) they are employed by a retail or service establishment; (2) their regular rate of pay exceeds one and one-half times the applicable minimum wage for every hour worked in a workweek in which overtime hours are worked; and (3) more than half of their total earnings in a representative period consist of commissions. *See* 29 U.S.C. § 207(i). Defendant contends that Plaintiffs met each of these criteria in the overwhelming majority of workweeks at issue, and therefore are owed minimal amounts of overtime wages, if any. *See Mechmet v. Four Seasons Hotel Ltd.*, 825 F.2d 1173 (7th Cir. 1987); *Nascembeni v. Quayside Place Partners*, No. 09-23322, 2010 WL 2351467 (S.D. Fla. June 11, 2010).

Plaintiffs initially believed that they were paid as "tipped employees," and that the employer's participation in the sharing of tips was an FLSA violation. However, Plaintiffs' position is that evidence produced by Defendant confirmed that Plaintiffs were paid the minimum wage tip credit amount plus they were paid a portion of service fees that Defendant charged customers. Thus, Plaintiffs believe it is possible the Court would find that the 7(i) exemption applies to Plaintiffs and because the Plaintiffs made at least 1.5 times the minimum wage for each hour they worked (when commissions are included), the employees were not entitled to overtime.

While both parties were fully prepared to litigate the matter, the Parties' Agreement represents an outcome that is reasonable given the facts of the case. Moreover, the Parties agree that settlement is reasonable in light of the range of possible recovery taking into account Plaintiffs' likelihood of success, hourly rate of pay, the number of workweeks at issue, and the number of alleged overtime hours worked by Plaintiffs. Defendant estimates that potential exposure is limited to approximately $2,784.00 in allegedly unpaid overtime wages. Therefore, the settlement sum of $20,000.00 reflects over **seven** times any actual damages.

In light of the foregoing, the Parties, and their counsel, agree that the settlement represents a fair and reasonable resolution of the dispute.

### C. The Attorneys' Fees Award is Fair and Reasonable

Plaintiffs' seek $7,990.36 in attorneys' fees. "In determining the reasonableness of attorneys' fees pursuant to a fee-shifting statute, the lodestar generally is recognized as a reasonable fee." *Romanowski v. Nestle Waters N. Am., Inc.*, No. 8:05-CV-1500-T-30EAJ, 2006 WL 3827537, at *1 (M.D. Fla. Dec. 28, 2006) (citing *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)).

When considering what constitutes a reasonable hourly rate, the court may consider the following twelve factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and the ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Gertz v. Coastal Reconstruction, Inc.*, No. 3:13-CV-1084-J-34JBT, 2014 WL 4655738, at *3, n.2 (M.D. Fla. Sept. 17, 2014) (quoting *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1974)).  There is a "strong presumption" that the lodestar reflects a reasonable sum the attorneys deserve.  *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565-66 (1986).  If the Court finds that the number of hours claimed is unreasonably high, the Court may reduce the hours using an across-the-board cut.  *See Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994).

Here, the billing attorneys are Jeremiah Talbott, who has over 20 years of litigation experience, and Travis Lambert, who has over 6 years of litigation experience.  Plaintiffs' counsel has spent approximately 37 hours litigating this case, with over 34 of those hours billed by Mr. Talbott.  Mr. Talbott has been awarded $350.00 per hour, and a reasonable attorney fee for Mr. Lambert, based on his experience, would be $250.00 per hour,

respectively, which are customary rates in this District for each attorney's respective level of experience.[2]

The time expended in prosecuting Plaintiffs' claims is not duplicative in nature and does not include time for billing for administrative tasks. Plaintiffs' attorney time does include time for attorney conferences and supervision of attorney tasks. Plaintiffs' counsel, as part of a negotiated settlement, has reduced their fee to $7,990.36.

### D.     Conclusion

In sum: (1) there is no collusion behind this Settlement Agreement; (2) the expense of the litigation would by far have exceeded the amount of the settlement reached, and the likely duration of the litigation would have delayed recovery, if any at all, by months if not years; (3) the settlement was reached relatively early in the proceedings, but occurred after exchange of wage and hour related information that allowed both Parties to make informed decisions regarding settlement. Further, given the substantial amount of evidence, and the number of witnesses involved, this matter would have required extensive litigation and judicial involvement; (4) while Plaintiffs alleged violations of the FLSA, there was also strong opposition and a possibility that Plaintiffs would not have been able to prevail; (5) the settlement is reasonable in light of the range of possible recovery; and (6) in the opinions of counsel, the settlement reached – including the amount for Plaintiffs' attorney's fees and costs – was in the

---

[2] Plaintiffs' costs in this matter come to $763.34 and counsel claims a fee of $7,990.36. The total attorneys fee is compromised from the total hours worked in this case. Plaintiff's' counsel contends that the hourly rate of $350.00 is very reasonable in this case and is consistent with what counsel has been awarded in his legal community and with what he has been awarded in other cases. *See Eanes v. Santeler & Sons Heating and Air Cond., Inc. et al*, No. 3:16CV461-MCR-CJK (N.D. Fla, June 6, 2017) (Order awarding Jeremiah Talbott attorney fees at the rate of $350.00); *Gayle v. Front Porch Tallahassee, LLC, et al*, No. 4:15 CV 329-MW/CAS (N.D. Fla, Oct. 23, 2015 (ECF Nos. 10, 17) (awarding Jeremiah Talbott attorneys' fees at the rate of $350.00); *Thompson v. Healthy Home Envt'l, LLC et al*; No. 8:15-CV-2905-T-27J (M.D. Fla , July 27, 2017 (ECF No. 20) (Order awarding Jeremiah Talbott attorney fees at the rate of $350.00).

best interest of the Parties and represented a fair and reasonable compromise of disputed claims.

For these reasons, this Court should grant this Joint Motion, approve the Parties' Settlement Agreement, and dismiss this case with prejudice.

      Respectfully submitted this 18th day of April, 2018,

| | |
|---|---|
| /s/ Jeremiah J. Talbott<br>JEREMIAH J. TALBOTT, ESQ.<br>FL Bar No. 0154784<br>Law Office of Jeremiah J. Talbott, P.A.<br>900 East Moreno Street<br>Pensacola, Fla. 32503<br>(850) 437-9600 / (850) 437-0906 (fax)<br>jj@ talbottlawfirm.com<br>civilfilings@talbottlawfirm.com<br>*Counsel for Plaintiffs* | /s/ Lorie E. Almon<br>LORIE E. ALMON, ESQ.<br>GENA B. USENHEIMER, ESQ.<br>Seyfarth Shaw, LLP<br>620 Eighth Avenue<br>New York, NY 10018<br>(212) 218-5500 / (212) 218-5526 (fax)<br>lalmon@seyfarth.com<br>*Counsel for Defendants* |
| | Brooke Chastain Juan<br>FL Bar No. 332940<br>Quintairos, Prieto, Wood & Boyer, PA<br>1410 N Westshore Blvd Ste 200<br>Tampa, FL 33607-4533<br>(813) 286-8818 / (813) 286-9998<br>bchastain@qpwblaw.com |

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 18, 2018, I caused a true and correct copy of the above Joint Motion for Approval of Settlement and Dismissal of the Lawsuit With Prejudice to be electronically filed with the Clerk of the Court via the Court's CM/ECF system, which sent notification of such filing to the following counsel of record:

Jeremiah Joseph Talbott
Law Office of Jeremiah J. Talbott, PA
900 East Moreno Street
Pensacola, FL 32503
Tel.:  (850) 437-9600
Fax:  (850) 437-0906
civilfilings@talbottlawfirm.com

Travis Phillip Lepicier
Law Office of Jeremiah J. Talbott, PA
900 East Moreno St
Pensacola, FL 32503
Tel.:  (850) 437-9600
Fax:  (850) 437-0906
travis@talbottlawfirm.com
Attorneys for Plaintiff

                Respectfully submitted,

                /s/ *Lorie E. Almon*
                Lorie E. Almon